UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD C. HOLLENBECK,

        Petitioner,

                                     Case No. 14-cv-1355-bhl

   v.

JASON BENZEL,[1]

        Respondent.

## ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS*

On October 27, 2014, Petitioner Richard Hollenbeck filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2011 state-court conviction for armed robbery. (Dkt. No. 1.) At Hollenbeck's request, the Court stayed this case from December 2014 through May 2016, while Hollenbeck completed postconviction proceedings in state court. (Dkt. No. 9.) After the Court reopened the case, Hollenbeck filed an amended petition in which he lists ten separate grounds for relief. (Dkt. No. 14.) These grounds fall into three categories: (1) ineffective assistance of trial counsel; (2) ineffective assistance of postconviction/appellate counsel; and (3) judicial error by the Wisconsin courts. The parties have briefed the issues and, based on the record, the Court denies Hollenbeck's habeas petition, dismisses the case, and declines to grant a certificate of appealability.

---

[1] The petitioner is currently housed in the Dodge Correctional Institution. (https://appsdoc.wi.gov/lop/detail.do.) Because Rule 2 of the Rules Governing Section 2254 Cases in United States District Courts requires the petition to name as the respondent the state officer who has custody of the petitioner, the Court has substituted the name of the current warden of the Dodge Correctional Institution. The Clerk is directed to change the caption of this case accordingly.

# BACKGROUND

## 1. State Trial Court Proceedings

On October 15, 2009, a criminal complaint was filed charging Hollenbeck with the armed robbery of Schultz's Bar in Superior, Wisconsin on October 12, 2009. (Dkt. No. 21-2 at 37-39.) According to the complaint, two men had been involved in the robbery. The main perpetrator wore a blue hooded sweatshirt and had a goatee. He brandished a knife, took a bank bag containing $3,000 from a drawer beneath the till, and then ran out of the bar. Surveillance video from the bar and a nearby convenience store showed a man in a dark sweatshirt with a bank bag running from the bar and then departing with a second man in a Dodge Neon with a discolored hood. (*Id.*)

The day after the robbery, police arrested Hollenbeck, who was a passenger in a Dodge Neon with a discolored hood. The arresting officer believed Hollenbeck matched the general description of the robbery suspect—a tall, white male with a prominent nose. Hollenbeck had a lock-blade folding knife with a wooden handle in his front pants pocket. Police also found a "bayonet-style knife" and a blue sweat jacket in the car, along with a tan bag containing $1,310 in small bills. Hollenbeck did not have a goatee when he was arrested, but a search of his hotel room turned up several razors and whisker shavings in the bathroom sink. Officers also found drug paraphernalia, several knives, hooded sweatshirts, and a hand-held portable radio. A similar radio was found outside of Schultz's Bar, and both radios were programmed to channel 6. (Dkt. No. 21-2 at 37-39; Dkt. No. 21-3 at 19.)

A preliminary hearing was held on October 21, 2009. Days earlier, Patrick Biver, the bartender at Schultz's Bar, had failed to identify Hollenbeck from a photograph showing Hollenbeck and another man leaving a nearby casino on the morning of the robbery, but he had identified the other man in the photograph as Steven Ecklund, a regular at the bar and a recent

friend of Hollenbeck's. Just before the hearing, an Assistant District Attorney indicated to Biver that the suspect's appearance may have changed, specifically inquiring whether anyone had told him that the person who had robbed him may have shaved his goatee. Biver also observed Hollenbeck being led from the elevator to the courtroom by a sheriff's deputy. And, during the preliminary hearing, Hollenbeck was seated next to defense counsel, handcuffed, and wearing an orange jumpsuit. (Dkt. No. 21-3 at 33-34.) Biver testified at the preliminary hearing and identified Hollenbeck as the perpetrator of the robbery. (Dkt. No. 21-5 at 9.)

Prior to trial, Hollenbeck's counsel filed a motion for the appointment of a special counsel. Counsel argued that, during the preliminary hearing, Biver testified that no one had informed him that Hollenbeck's appearance had changed since the time of the robbery. However, the day after the hearing, the Assistant District Attorney sent a letter summarizing his comments to Biver prior to the hearing. Counsel wanted to call the Assistant District Attorney as a witness for the defense to impeach Biver's identification testimony and prove that Biver testified falsely at the preliminary hearing. (Dkt. No. 21-2 at 47-49; Dkt. No. 21-2 at 51.) The parties ultimately stipulated to the Assistant District Attorney's summary of his conversation in an affidavit. (*See* Dkt. No. 21-6 at 95, 218.)

Defense counsel also filed a motion to dismiss the charges against Hollenbeck. The motion to dismiss was based on Hollenbeck's assertion that the government failed to preserve exculpatory surveillance video and cell phone records. Hollenbeck claimed that he had been at or near the Acme Tool Company at the time of the robbery meeting with a woman named Teresa Poehls who wanted to repay Hollenbeck $40 he had lent her. Twice, Hollenbeck's counsel wrote letters to the Assistant District Attorney and told him that the company's security cameras may hold exculpatory footage of Hollenbeck and that the company would be destroying the tapes. Police investigators

did not review the tapes before they were destroyed. (Dkt. No. 21-2 at 41-46.) Defense counsel also argued that the state had failed to perform a forensic analysis of Hollenbeck's cell phone, which would have reflected that he received a call from Poehls at about 8 a.m. on the morning of the robbery. By the time the state returned the phone to Hollenbeck, the phone's data, including the call history, was no longer available. Following an evidentiary hearing where Poehls testified, the trial court rejected defense's arguments that the charges should be dismissed, and Hollenbeck's case proceeded to a jury trial. (*See* Dkt. No. 21-5 at 225-29; 235-38.)

Trial began on March 28, 2011. Biver testified about the events on the morning of the robbery, consistent with his preliminary hearing testimony. He testified that, shortly before 9 a.m., a man came into the back door of Schultz's Bar with a knife, told him to back up, grabbed a money bag with about $3,000 from a drawer beneath the till, and then ran out of the bar. Biver also testified that, about ten minutes before the robbery, Ecklund (Hollenbeck's friend), who had been in the bar for only a few minutes, left the bar. Biver, who testified that he would never forget the robber's face and his "nice big nose," identified Hollenbeck as the robber. (Dkt. No. 21-5 at 355-70.)

The trial evidence also included testimony from Ecklund, who admitted being with Hollenbeck on the morning of the robbery. He testified that he and Hollenbeck had visited a casino across the border in Minnesota that morning, and then drove to Superior in a Dodge Neon, stopping at a gas station across the street from Shultz's Bar, where Ecklund was a regular. Ecklund and Hollenbeck walked across the street but Ecklund entered the bar alone and stayed for only a few minutes. He reported seeing Hollenbeck in the back hallway when he left the bar and telling him to rob another bar. Both men then returned to the car, but Hollenbeck walked back across the street toward the bar and returned a minute or two later, telling Ecklund to go. Ecklund testified

that Hollenbeck had a bank bag and a knife. Ecklund identified Hollenbeck as the robber in surveillance video. He also confirmed that the two men had previously purchased handheld radios, one of which was found at the bar after the robbery, and that he had purchased razors for Hollenbeck after the robbery so he could shave off his goatee. (Dkt. No. 21-5 at 437-79.)

After a three-day trial, the jury returned a guilty verdict against Hollenbeck on March 30, 2011. (Dkt. 21-2 at 69.) The circuit court entered a judgment of conviction for felony armed robbery and sentenced him to twenty-five years of confinement followed by fifteen years of extended supervision. (Dkt. No. 21-2 at 34.)

## 2. State Postconviction and Appellate Court Proceedings

With the aid of postconviction counsel (different from his trial counsel), Hollenbeck filed a motion for a new trial, based largely on the argument that Biver's identification testimony should have been suppressed. (Dkt. No. 21-2 at 98.) Postconviction counsel further argued that if the court found this issue had been waived based on trial counsel's failure to file a motion to suppress, then trial counsel should be found to have been constitutionally ineffective for having failed to raise the issue. (*Id*. at 102-03.) After a September 20, 2012 hearing during which Hollenbeck's trial counsel testified, the circuit court denied the motion. (*Id.* at 106; Dkt. No. 21-6 at 134-41.)

Hollenbeck, represented by the same attorney, then filed a direct appeal. The issue presented was that his trial counsel was constitutionally ineffective because he failed to seek suppression of Biver's identification testimony. (Dkt. No. 21-3 at 25.) Citing *State v. Dubose*, 285 Wis. 2d 143 (2005), appellate counsel argued that the identification "should have been suppressed because the identification was tainted by an unnecessary and inherently suggestive showup procedure conducted at the preliminary hearing. . . ." (*Id*.) Appellate counsel further argued that trial counsel's failure to seek suppression of the identification testimony in the circuit

court deprived Hollenbeck of his right to effective counsel. On September 24, 2013, the court of appeals rejected the appeal, holding that *Dubose* did not apply because Biver's identification of Hollenbeck during the preliminary hearing "was not the product of a showup," which *Dubose* defined as "an *out-of-court* pretrial identification procedure. . . ." (Dkt. No. 21-3 at 303.) It further reasoned that, because *Dubose* did not apply, trial counsel could not have performed deficiently because "[a]n attorney does not perform deficiently by failing to pursue a meritless motion." (*Id.* at 304.) The court of appeals also held that Hollenbeck had not established that he was prejudiced by his attorney's failure to seek suppression because, "[e]ven without Biver's identification testimony, the evidence was more than sufficient for the jury to convict Hollenbeck." (*Id.*)

Hollenbeck sought review of the court of appeals decision in the Wisconsin Supreme Court, but that court denied his petition for review on January 13, 2014. (Dkt. No. 21-3 at 366.)

Next, on August 27, 2014, Hollenbeck, now *pro se*, filed a second motion for a new trial in the circuit court under Wis. Stat. §974.06. In this second postconviction motion, Hollenbeck raised numerous claims concerning the state's conduct, including its failures to disclose witnesses, correct false testimony, produce cell phone information, and pursue allegedly exculpatory surveillance video. Hollenbeck also alleged that his trial and postconviction/appellate counsel were ineffective in failing to raise these issues. (Dkt. No. 21-2 at 109-36.)

On October 6, 2014, Hollenbeck filed a petition for writ of *habeas corpus* pursuant to *Knight v. King* in the court of appeals. (Dkt. No. 21-4 at 6.) On December 3, 2014, the Wisconsin Court of Appeals denied Hollenbeck's petition, noting that Hollenbeck's contention that Biver's identification testimony was tainted was merely a repackaging of his previously denied argument. (*Id.* at 65.) The court of appeals repeated its previous conclusion that, even without Biver's

testimony, "the evidence was more than sufficient for the jury to convict Hollenbeck." (*Id.*) The Wisconsin Supreme Court denied Hollenbeck's petition for review. (*Id.* at 79.)

On December 9, 2014, about a week after the court of appeal's decision, the circuit court denied Hollenbeck's second postconviction motion, explaining that his claims were all procedurally barred under *State v. Escalona-Naranjo* and Wis. Stat. §974.06 because the issues he raised had been addressed or should have been addressed in his prior postconviction motion. (Dkt. No. 21-2 at 172-73.) On December 22, 2014, Hollenbeck filed a motion for reconsideration. (Dkt. No. 21-2 at 174.) The next day, on December 23, 2014, Hollenbeck filed a second notice of appeal. (Dkt. No. 21-2 at 178.) The circuit court denied Hollenbeck's motion for reconsideration on February 18, 2015. (Dkt. No. 21-2 at 183.)

About a year later, on February 9, 2016, the court of appeals denied Hollenbeck's second appeal. Like the circuit court, the Wisconsin Court of Appeals concluded that Hollenbeck's claims were barred by *State v. Escalona-Naranjo* and Wis. Stat. §974.06(4). (Dkt. No. 21-4 at 233-38.) The court of appeals noted that, under Wisconsin law, a motion under Wis. Stat. §974.06 "could not be used to review issues which were or could have been litigated on direct appeal." (*Id.* at 233) (quoting *Escalona-Naranjo*, 185 Wis. 2d 168, 172 (1994)). The court of appeals concluded that because Hollenbeck had not shown a sufficient reason why he had not previously raised the issues, his failure to raise these claims on direct appeal barred him from raising them in the state court habeas proceeding.

In reaching its decision, the court of appeals acknowledged that ineffective assistance of counsel can be a sufficient reason for failing to previously raise newly alleged errors. But, after applying the standard in *Strickland v. Washington*, the court of appeals concluded that

Hollenbeck's postconviction counsel[2] had not been constitutionally deficient and, "[e]ven assuming deficiency on the part of Hollenbeck's attorneys, Hollenbeck fail[ed] to establish prejudice." (Dkt. No. 21-4 at 237.) The court of appeals once again emphasized the "overwhelming evidence of Hollenbeck's guilt," noting that, "even if his counsel had raised the claims that Hollenbeck now offers, there is no reasonable probability of a different result." (*Id.* at 237-38.)

The court of appeals also explained that attorneys must make strategic decisions and select the strongest claims from among all the nonfrivolous claims available when deciding which claims to pursue. Accordingly, under *State v. Romero-Georgana*, "a defendant who alleges in a § 974.06 motion that his postconviction counsel was ineffective for failing to bring certain viable claims must demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." (Dkt. No. 21-4 at 233-34) (quoting *Romero-Georgana,* 360 Wis. 2d 522, 530 (2014)). The court of appeals concluded that Hollenbeck had "neither alleged nor demonstrated how [the newly raised] claims are 'clearly stronger' than the claims postconviction counsel pursued." The court of appeals emphasized that postconviction counsel's having raised a claim that failed (*i.e.*, the claim regarding Biver's identification) was insufficient

---

[2] Hollenbeck refers to the alleged errors of his trial and "appellate" counsel throughout his petition. The Wisconsin Court of Appeals construed "his argument to be that his *postconviction* counsel was ineffective by failing to raise additional challenges to the effectiveness of [his] trial counsel." (Dkt. No. 21-4 at 234) (emphasis added). Hollenbeck appears not to appreciate the difference between appellate counsel and postconviction counsel. These are different roles with different functions. (*Id.* at 237, n. 3.) Wisconsin law employs different procedures for challenges to the ineffectiveness of postconviction and appellate counsel. An ineffective assistance claim against postconviction counsel must be raised in the *circuit court* through a habeas petition or a §974.06 motion, while an ineffective assistance claim against appellate counsel is raised by filing a habeas petition in the *court of appeals*. (*Id.* citing *State v. Knight*, 168 Wis. 2d 509, 512-13 (1992)).) Here, Hollenbeck filed a §974.06 motion (and supplement) in the circuit court, which is the procedure for making a claim of ineffective assistance of postconviction counsel. Accordingly, the court of appeals considered all but one of Hollenbeck's ineffective assistance claims as challenges to the effectiveness of *postconviction* counsel. As Hollenbeck notes, however, his postconviction and appellate counsel were the same person, and he raised the same single claim regarding Biver's testimony.

on its own to show that counsel was deficient for failing to raise the additional claims Hollenbeck currently identified. (*Id.* at 236.)

Finally, the court of appeals briefly addressed the merits of Hollenbeck's claim regarding the state's failure to preserve surveillance video from the Acme Tool's parking lot. The court of appeals noted that "[a] defendant's due process rights are violated if the police: (1) failed to preserve evidence that is 'apparently' exculpatory; or (2) acted in bad faith by failing to preserve evidence that is 'potentially' exculpatory." (Dkt. No. 21-4 at 236) (citing *State v. Greenwold*, 189 Wis. 2d 59, 67-68 (Ct. App. 1994)). The court of appeals then pointed out that trial counsel had moved to dismiss the case based on the state's failure to preserve the video and that, after an evidentiary hearing, the circuit court determined: (1) the video was, at most, only potentially exculpatory (thereby failing to satisfy the first prong), and (2) Hollenbeck had not established that the state acted in bad faith when it failed to ensure the video's preservation (thereby failing to satisfy the second prong). The court of appeals thereby concluded that Hollenbeck had not shown that this claim was "clearly stronger" than the Biver identification claim that postconviction pursued.

The Wisconsin Supreme Court denied Hollenbeck's petition for review on May 5, 2016. (Dkt. No. 21-4 at 262.) About four months later, Hollenbeck filed his amended petition for writ of *habeas corpus* in this Court. (Dkt. No. 14.)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)). A federal habeas court reviews "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citation omitted).

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "Section 2254(d) reflects the view that *habeas corpus* is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

Most of Hollenbeck's grounds for relief center on his assertion that his trial and postconviction/appellate attorneys provided ineffective assistance of counsel. "Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." *United States v. Berg*, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

The performance prong of *Strickland* requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To establish prejudice under

*Strickland*, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694 (1984)).

In the habeas context, "[e]stablishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). This is because the *Strickland* and §2254(d) standards are both "highly deferential," so when the two apply in tandem, federal-court review is "doubly deferential." *Id.*; *Cullen v Pinholster*, 563 U.S. 170, 190 (2011). Accordingly, the question before this Court "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

## ANALYSIS

### I. The Wisconsin Court of Appeals Did Not Err in Rejecting Hollenbeck's Ineffective Assistance of Trial Counsel Claim as Asserted in Ground One of the Petition.

Hollenbeck contends in ground one of his petition that his trial counsel was constitutionally ineffective because he failed to seek suppression of an "overly suggestive and unconstitutional identification made by the robbery victim Patrick [Biver]." (Dkt. No. 14-1 at 1.) Because the Wisconsin Court of Appeals reasonably concluded that Hollenbeck was not prejudiced by this alleged deficiency, Hollenbeck is not entitled to federal habeas relief on this ground.

Respondent insists that the Court can give short shrift to Hollenbeck's first ground because the court of appeals resolved this claim on the merits and did so on Wisconsin state-law, not federal-law, grounds. Specifically, the court of appeals held that *State v. Dubose*, 285 Wis. 2d 143 (2005), would not have required the suppression of Biver's testimony because his *in-court* identification at the preliminary hearing "was not the product of a showup," which *Dubose* defines as "an *out-of-court* pretrial identification procedure. . . ." (Dkt. No. 21-3 at 303.) The court of

appeals explained that, because *Dubose* does not apply, Hollenbeck cannot satisfy the deficiency prong of the *Strickland* standard because his counsel cannot have been deficient for failing to pursue a meritless argument.  Respondent argues that, because the court of appeals relied on a *state* court decision to decide that counsel's performance was not deficient, Hollenbeck has failed to carry his burden of showing that the court of appeals' decision contradicted or unreasonably applied clearly established *federal* law as required by 28 U.S.C. §2254(d)(1) or unreasonably determined facts as required by 28 U.S.C. § 2254(d)(2).  (Dkt. No. 26 at 13.)

But it is not clear that the court of appeals' analysis fairly characterized the entirety of Hollenbeck's argument.  While postconviction/appellate counsel (and later Hollenbeck) relied specifically on *Debose*, they also argued generally that the circumstances leading up to Biver's identification of Hollenbeck were unnecessarily and inherently suggestive, which is a constitutional concern that goes beyond whether Biver's identification at the preliminary hearing was a "showup" as defined by *Dbose*.  The court of appeals did not directly address those broader, constitutional concerns.

This Court need not, however, evaluate whether the court of appeals framed the issue too narrowly because the court of appeals also concluded that Hollenbeck's claim failed for lack of proof of prejudice.  The court of appeals explained that, [e]ven without [the bartender's] identification testimony, the evidence was more than sufficient for the jury to convict Hollenbeck." (Dkt. No. 21-3 at 304.)  It highlighted that Ecklund, who was also involved, identified Hollenbeck as the person who committed the robbery, that surveillance video showed Hollenbeck and Ecklund together about an hour before the robbery, that there was ample time for Hollenbeck to commit the robbery prior to getting breakfast (for which he had a time-stamped receipt), that he was apprehended while riding in the car involved in the robbery, that a knife and large amount of cash

were found in the car, that Hollenbeck had purchased the hand-held radios linked to the robbery, and that Hollenbeck had shaved his goatee shortly after the robbery. In addition, as the circuit court pointed out, there was "a video showing the event basically from start to finish with stills during certain periods of time," so the jury had its own "opportunity to compare the person on the video to Mr. Hollenbeck." (Dkt. No. 21-6 at 140.) The court of appeals also acknowledged that, while Hollenbeck provided two witnesses who testified that he was elsewhere during the robbery, the jury was entitled to conclude that that testimony was not credible.

Based on the evidence presented at Hollenbeck's trial, the court of appeals reasonably concluded that there was sufficient evidence to convict Hollenbeck even without Biver's identification testimony. As the court of appeals explained, because Biver's testimony was not necessary to the jury's finding of guilt, Hollenbeck failed to demonstrate that he was prejudiced by his trial counsel's failure to seek suppression of that testimony. Because this conclusion was reasonable, Hollenbeck is not entitled to relief on this basis.

## II. The Wisconsin Court of Appeals Did Not Err in Concluding that the Claims Asserted in Grounds Two Through Seven of the Petition Are Procedurally Barred.

The majority of Hollenbeck's grounds for relief relate to the alleged ineffectiveness of his postconviction/appellate counsel in failing to challenge various decisions by his trial counsel. In grounds two and three, Hollenbeck argues that trial counsel should have moved to dismiss the armed-robbery charge, reviewed the audio tapes of detectives' interviews, made inquiries about the Acme Tool surveillance video, interviewed eyewitnesses, and challenged the state's failure to disclose evidence. In grounds four, five, and six, Hollenbeck argues that trial counsel should have asserted prosecutorial misconduct and challenged the state's failure to produce evidence (namely, Hollenbeck's cell phone and video footage from a gas station near the bar). And in ground seven,

Hollenbeck argues trial counsel should have objected to the prosecutor's false testimony, misleading argument, and lies. (Dkt. No. 14-1 at 2-7.)

The court of appeals concluded that these claims were procedurally barred by Wis. Stat. §974.06(4) and *State v. Escalona-Naranjo*, 185 Wis. 2d 168 (1994), because Hollenbeck failed to show a sufficient reason why he had not raised them in his first postconviction motion. (Dkt. No. 21-4 at 233.) The court of appeals acknowledged that ineffective assistance of counsel may constitute a sufficient reason for failing to previously raise claims but concluded that Hollenbeck failed to establish ineffective assistance of counsel. Because the court of appeals "clearly and expressly" relied on procedural default as the basis of its ruling and because those procedural grounds were adequate, Hollenbeck is not entitled to relief on these grounds. *See Howlett v. Richardson*, 729 F. App'x 461, 465 (7th Cir. 2018); *Lee v. Foster*, 750 F.3d 687, 693-94 (7th Cir. 2014).

As noted, the court of appeals determined that Hollenbeck failed to show that his counsel's performance was deficient and/or that any deficiency resulted in prejudice to him. With regard to his claims about the state's failure to preserve the Acme Tool video, the court of appeals first noted that Hollenbeck's assertion that his trial counsel had failed to pursue arguments relating to the video was belied by the record, which showed that trial counsel had moved to dismiss the case on that very basis. The court of appeals then explained why his postconviction/appellate counsel's decision not to pursue arguments relating to the video was not constitutionally deficient.

The court of appeals started by stating the standard—namely that, a "defendant's due process rights are violated if the police: (1) failed to preserve evidence that is "apparently" exculpatory; or (2) acted in bad faith by failing to preserve evidence that is "potentially" exculpatory." (Dkt. No. 21-4 at 236) (citations omitted). The court of appeals then summarized

the conclusions of the circuit court that the video was at most only "potentially" exculpatory (thereby failing to satisfy the first prong), and that police had not acted in bad faith by failing to preserve the video (thereby failing to satisfy the second prong). A brief review of the circuit court's reasoning shows the reasonableness of the court of appeals' conclusions.

With regard to its conclusion that the video was not "apparently" exculpatory but only "potentially" exculpatory, the circuit court noted that it was unclear "what the evidence would have shown or not." (Dkt. No. 21-5 at 152.) The circuit court found some of Hollenbeck's testimony troubling and not credible, so it declined to take his word regarding what the video would show. The circuit court noted that no one had seen Hollenbeck on the video, and it had not even been established what angles the camera covered and whether Hollenbeck had been in an area covered by the camera. The Seventh Circuit[3] has explained that "[t]o be considered 'apparently' exculpatory, the exculpatory nature of the evidence must be apparent *before* it is destroyed. Accordingly, '[t]he possibility that [the evidence] *could* have exculpated [the petitioner] *if* preserved . . . is not enough to satisfy the standard . . . ." *McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011) (citations omitted). As the circuit court observed, no one knows what the video would have shown, so its decision that the video was not "apparently" exculpatory was correct.

As to whether the police acted in bad faith, a "finding of bad faith…turns on 'the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *McCarthy*, 656 F.3d at 486. It is beyond dispute that no one, including Hollenbeck,

---

[3] The Seventh Circuit has noted that its interpretation of cases outlining a defendant's due process rights in connection with the destruction of potentially exculpatory evidence differs from that of the Wisconsin courts, *see McCarthy v. Pollard*, 656 F.3d 478, 484-85 (7th Cir. 2011), but the Court need not explore those differences because regardless of which interpretation applies, the circuit court reasonably concluded that the video had no apparent exculpatory value and the state did not act in bad faith when it failed to preserve it.

ever knew what the video did nor did not show. And, as the circuit court pointed out, even if someone had known the value of the video, a detective made efforts to get the video. The circuit court acknowledged that those efforts were made "late in the game," but it observed that the efforts were made "prior to the time that we believe the evidence was destroyed or overwritten." (Dkt. No. 21-5 at 151.) Accordingly, the circuit court's decision that the police had not acted in bad faith was also correct.

The court of appeals also emphasized that, even if a claim related to the video was viable, "[a]ppellate counsel is not required to raise on direct appeal every nonfrivolous issue the defendant requests." (Dkt. No. 21-4 at 237.) It noted the long-established principle that "[c]ounsel is free to strategically select the strongest from among all the nonfrivolous claims available in order to maximize the likelihood of success on direct review. Thus, 'only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." (*Id.*) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Hollenbeck has not shown (nor, based on the circuit court's conclusions, could he show) that issues involving the video were "clearly stronger" than the identification issue his postconviction counsel chose to pursue. Based on the foregoing, the Court has no trouble concluding the court of appeals acted reasonably in concluding that Hollenbeck failed to establish ineffective assistance of counsel with regard to this claim.

With regard to the remaining claims Hollenbeck identifies in grounds two through seven, the court of appeals explained that he did not show that he was prejudiced by counsel's failure to pursue those claims. The court again noted the "overwhelming evidence of Hollenbeck's guilt," explaining that "even if his counsel had raised the claims Hollenbeck now offers, there is no reasonable probability of a different result." (Dkt. No. 21-4 at 237-38.)

The court of appeals reasonably concluded that Hollenbeck failed to show that his counsel was constitutionally ineffective for deciding not to pursue the claims Hollenbeck asserts in grounds two through seven of his petition. And, because Hollenbeck did not establish ineffective assistance of counsel, he did not provide a sufficient reason for failing to raise the claims in his first postconviction motion. Accordingly, the court of appeals reasonably applied the *Escalona-Naranjo* procedural bar, which the Seventh Circuit has recognized as an independent and adequate state ground. This Court may not, therefore, consider the merits of grounds two through seven because the court of appeals "rest[ed] its decision on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002). These claims cannot form the basis for federal habeas relief.

## III. Hollenbeck's Claims of Judicial Error in Grounds Eight and Ten of his Petition Do Not Warrant Habeas Relief.

In ground eight of his petition, Hollenbeck asserts that the circuit court and court of appeals violated his due process rights because they did not consider two CDs that contained a recording of Hollenbeck's interrogation, which Hollenbeck insists references another suspect. (Dkt. No. 14-1 at 8.) This ground is related to a portion of ground two in Hollenbeck's petition, in which he claims his counsel was constitutionally ineffective because he "failed to review audio files of detectives' interviews of Hollenbeck." (*Id.* at 2.) In denying Hollenbeck's request for consideration of the CDs, the circuit court noted that, "Mr. Hollenbeck would like the court to make some finding regarding an audio recording of the conversation of law enforcement after he left an interview room. . . . The recording was provided and Mr. Hollenbeck's attorney had the ability to use it." (Dkt. No. 21-2 at 172.) The court of appeals later noted that, "[b]ecause the CDs were not offered into evidence and their content was not considered by the circuit court, they

cannot be added to the record on appeal." (Dkt. No. 21-4 at 175.)  Hollenbeck insists these rulings are erroneous and therefore he is entitled to relief.  He is incorrect.

A federal court may grant habeas relief only if a state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.  Although Hollenbeck concludes that the refusals of the circuit court and the court of appeals to consider this evidence violated his due process rights, he does not adequately explain why.  Hollenbeck had access to the CDs during his trial, but he failed to offer them into evidence.  He offers no support for his argument that due process required the circuit court to give him a second chance at offering that evidence after his trial had concluded.

As a fallback, Hollenbeck also argues that his trial counsel was constitutionally ineffective for failing to offer the recordings into evidence.  In arguing the importance of the CDs' inclusion to the court of appeals, Hollenbeck stated:

> You can plainly hear detectives and police officers talking back and forth about different issues involving Mr. Hollenbeck and the armed robbery.  At one point the detectives mention 'the guy who ran from the tracks.'  This is shortly after they mention Arby's.  A few sentences later, the detective says: 'Armed robber down the tracks.  I just want the video tape for 9 o'clock.'

(Dkt. No. 21-4 at 235.)

After acknowledging that the recording was not in the record, the court of appeals noted that, even "[f]rom Hollenbeck's own description, however, no suspect is named.  Further, without the context of the missing sentences from the recording, it is not clear this discussion constituted 'evidence' requiring disclosure." (Dkt. No. 21-4 at 235.)  Given the vague nature of the detectives' discussion, Hollenbeck clearly overstates the impact that presenting this evidence would have had on the jury's decision (particularly considering the overwhelming evidence of his guilt).

Accordingly, the court of appeals reasonably concluded that Hollenbeck failed to show that this claim is clearly stronger than the one his postconviction counsel raised.

In ground ten of his petition, Hollenbeck asserts he is entitled to relief because the circuit court and court of appeals decided the claims he raised in his second postconviction motion were procedurally barred. Hollenbeck explains the application of this procedural bar is unfair because he did not have access to his trial materials until after his first postconviction motion and appeal had been denied. He states that it was only then that he realized the extent of the errors made at his trial, which is why he was forced to raise so many issues in a second postconviction motion. He asserts that he should not be prevented from raising claims just because his postconviction counsel failed to raise them.

Hollenbeck is not entitled to relief on this basis. As explained above, the court of appeals considered this argument and reasonably concluded that Hollenbeck failed to demonstrate his counsel was constitutionally ineffective when he pursued the identification claim rather than pursuing the claims Hollenbeck raised in his second postconviction motion. Hollenbeck therefore failed to show a sufficient reason for failing to previously raise his newly asserted claims, and the court of appeals properly concluded that the newly asserted claims were procedurally barred.

## IV. Hollenbeck's Catchall Claim of Unfairness in Ground Nine of his Petition Does Not Warrant Habeas Relief.

Finally, in ground nine of his habeas petition, Hollenbeck asserts that, considering the totality of the violations, his whole trial process was unfair. (Dkt. No. 14-1 at 8.) This catchall claim fails. The Seventh Circuit has explained that "[t]rial errors which in isolation are harmless might, when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law." *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). To prevail on a cumulative effect claim, a petitioner must establish two elements: "(1) at least two errors were committed in the

course of the trial; and (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Id.*

Hollenbeck cannot satisfy the first prong because he fails to show that there was a single error, let alone two. The circuit court thoughtfully considered and thoroughly explained why it would not have suppressed Biver's identification even if such a request had been made, it also explained why the state's failure to preserve the Acme Tool video did not require that the charges against Hollenbeck be dismissed. Although Hollenbeck disagrees with the circuit court's decisions, he has, for the reasons already explained, failed to establish that those decisions were erroneous. The remaining alleged errors are trivial compared to the overwhelming evidence of Hollenbeck's guilt. Hollenbeck is not entitled to habeas relief on this basis.

## Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court declines to issue a certificate of appealability because no reasonable jurist could debate that Hollenbeck has not stated a ground for habeas relief under 28 U.S.C. §2254.

## CONCLUSION

**IT IS HEREBY ORDERED** that Hollenbeck's amended petition for writ of *habeas corpus* (Dkt. No. 14) is **DENIED** and this case is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue.

Dated at Milwaukee, Wisconsin on August 27, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge